IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| E-STEPS, LLC<br><br>Plaintiff<br><br>vs<br><br>AMERICAS LEADING FINANCE, LLC; TRAKSECURE CORP.; NICOLAS KOGAN, JANE DOE and their conjugal partnership; CAROLA ACUM, JOHN DOE and their conjugal partnership; VICTOR GARCIA PORRATA, SUSAN ROE and their conjugal partnership; LUIS O'FARRIL, JANE ROE and their conjugal partnership; CORPORATION ABC; PARTNERSHIP DEF; LIMITED LIABILITY COMPANY GHI<br><br>Defendants | CIVIL 19-1637CCC |

**OPINION AND ORDER**

On July 2, 2019, plaintiff e-Steps, LLC filed a Complaint (d.e. 1) against America's Leading Finance, LLC ("ALF"), Traksecure, Corp. ("Traksecure"), and employees and executives of each company for copyright infringement, violations of the Defense Trade Secrets Act ("DTSA"), and claims under Puerto Rican law. The claims relate to "Total Control GPS," a vehicle tracking software program that plaintiff developed and that was allegedly copied by defendants. Before the Court are ALF's Motion to Dismiss (**d.e. 18**) filed July 19, 2019 and co-defendants Traksecure, Víctor García Porrata, Luis O'Farril, Conjugal Partnership García Roe, and Conjugal Partnership O'Farril Roe's Motion to Dismiss (**d.e. 34**) filed August 16, 2019. Both Motions to Dismiss make essentially the same arguments: that plaintiff failed to state

CIVIL 19-1637CCC                    2

a valid claim for copyright infringement under FRCP 12(b)(6), and that the Court lacks subject matter jurisdiction over the DTSA claim under FRCP 12(b)(1).

## I.   STANDARD OF REVIEW

FRCP 12(b)(1) "provides the vehicle by which a party may challenge the court's subject matter jurisdiction." UBS Financial Services Inc. v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 223 F.Supp. 3d 134, 136-37 (D.P.R. 2016).  When reviewing motions to dismiss under Rule 12(b)(1), courts follow a similar standard to other motions under Rule 12(b) and "credit the non-movant's well-pled factual allegations and draw all reasonable inferences in the non-movant's favor." Id. "If it appears at any time that the Court lacks the statutory or constitutional power to adjudicate the case, the suit must be dismissed." Id.; Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The Court must accept all non-conclusory factual allegations in the Complaint as

CIVIL 19-1637CCC                                3

true, and draw any reasonable inferences in favor of the plaintiff. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## II.   APPLICABLE LAW

### A.   Copyright

In order to establish a claim for copyright infringement, the plaintiff bears the burden of showing "'(1) ownership of a valid copyright, and (2) [unauthorized] copying of constituent elements of the work that are original.'" Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir.1995), aff'd by an equally divided court, 516 U.S. 233 (1996) (quoting Feist Public'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

"To show ownership of a valid copyright, a plaintiff bears the burden of proving that the work, when viewed as a whole, is original and that he has complied with the requisite statutory formalities." Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc., 119 F.3d 55, 59 (1st Cir. 1997). A certificate of copyright registration is prima facie evidence that the registered material is copyrightable, and shifts the burden to the defendant to demonstrate why the copyright is not valid. Id.; 17 U.S.C. § 410(c). The types of works subject to copyright protection are limited by 17 U.S.C. § 102(b):

> (b)   In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

The seminal case is Baker v. Selden, 101 U.S. 99 (1879), which concerned copyright protection for an accounting system described in the plaintiff's book.

CIVIL 19-1637CCC                    4

The Court found that while the specific words the author used to describe the accounting system were copyrighted, the system itself could not be copyrighted; this type of work "can only be secured, if it can be secured at all, by letters-patent." Id. at 104.

In addition, "[t]he doctrine of scènes à faire denies copyright protection to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment of a given subject matter." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 68 (1st Cir. 2009).

Once ownership of a valid copyright has been established, the plaintiff must establish copying. "[T]he plaintiff must show that his work was 'actually copied,' either by 'direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony.'" Laureyssens v. Idea Grp., Inc., 964 F.2d 131, 140 (2d Cir. 1992)." After establishing actual copying, the plaintiff must also show that the allegedly infringing work bears "substantial similarity" to the copyrighted work. Id.

"It is well settled by now that computer programs are afforded copyright protection as literary works." Lotus, 49 F.3d at 813. "Literal" copying cases, where the source code or object code of a program is copied word for word, are relatively straightforward. However, courts have struggled to apply copyright protections to the "nonliteral" or non-written aspects of computer programs. The difficulty lies in distinguishing between the expressive aspects of computer programs, which can be protected, and functional aspects, which cannot.

CIVIL 19-1637CCC                           5

The controlling case in the First Circuit is <u>Lotus</u>, 49 F.3d.  In <u>Lotus</u>, the defendant admitted that it had directly copied a menu command hierarchy from the plaintiff's software.  Defendant had therefore not independently developed the menu command hierarchy, and the two hierarchies were more than merely substantially similar -- they were identical.  Despite the uncontested evidence of copying, the Court held that a menu command hierarchy is not copyrightable because it is a "method of operation" under 17 U.S.C. § 102(b).  The Court stated that while the menu command hierarchy might contain some expressive aspects, such as the names assigned to different commands, the fact that it was a method of operation rendered its expressive aspects uncopyrightable.  While other circuits have declined to follow <u>Lotus'</u> holding that "anything that performs a function is necessarily uncopyrightable," <u>Oracle Am., Inc. v. Google Inc.</u>, 750 F.3d 1339, 1357 (Fed. Cir. 2014), this interpretation of copyright law controls in the First Circuit.

A party who does not personally violate a copyright may be liable for acts of infringement by third parties when it "infringes contributorily by intentionally inducing or encouraging direct infringement" or "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (2005).

**B.    <u>Defense Trade Secrets Act</u>**

The Defense Trade Secrets Act ("DTSA") provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this

CIVIL 19-1637CCC					6

subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The interstate commerce requirement is jurisdictional. See Gov't Employees Ins. Co. v. Nealey, 262 F. Supp. 3d 153, 172 (E.D. Pa. 2017) (citing H.R. Rep. NO. 114–529, at 9). To plead a cause of action under the DTSA, the plaintiff must allege that a trade secret was misappropriated; that he took reasonable measures to keep the information secret; and that the information has independent economic value. See 18 U.S.C. §§ 1836(b)(1), 1839(3); Allscripts Healthcare, LLC v. DR/Decision Res., LLC, 386 F. Supp. 3d 89, 94 (D. Mass. 2019).

### III.  ANALYSIS

#### A.  Copyright

Defendants seek to dismiss the copyright claims under FRCP 12(b)(6) for failure to state a claim. E-Steps filed and obtained three copyright registrations: a registration effective on February 21, 2019 for "Total Control GPS" (d.e. 1-2); a registration effective on April 17, 2019 for "Total Control GPS Installer Certificate" (d.e. 1-3), and a registration effective on May 16, 2019 for "Total Control GPS - Functional Specifications" (d.e. 1-4). Each of these registrations purports to protect different elements of e-Steps' creation. As plaintiff has submitted registrations of copyright, the burden to disprove the validity of the copyright shifts to the defendants, who argue that the allegedly infringed materials are not copyrightable under 18 U.S.C. § 1836 102(b).

CIVIL 19-1637CCC                    7

If the material is not protected, then the copyright is invalid, and the Court's inquiry must end. If the copyright is valid, the Court must move to the second step and determine whether plaintiff has sufficiently plead that the material has been copied by defendants.

### 1.   "Total Control GPS"

As a preliminary matter, e-Steps' Complaint suffers from a lack of specificity about what is covered by the "Total Control GPS" copyright. E-Steps references several different programs, and it is unclear how they all fit together: "Business Process Procedure" (d.e. 1, para. 30); "Total Control Fleet Management Cloud Service" (para. 32); and "Total Control GPS- Web Portal" (para. 46).  The Complaint alleges that "e-Steps' copyrighted material are components of the 'Total Control Fleet Management Cloud Service'" (para. 33), without specifying exactly which  components are copyrighted. In making all reasonable inferences in favor of the plaintiff, the Court shall assume that all of the above programs, including both functional and expressive aspects, are included under the "Total Control GPS" copyright.

Defendants move to dismiss plaintiff's copyright claim because a "procedure, process, system, [or] method of operation" may not be copyrighted under 18 U.S.C. § 102(b); see also Lotus, 49 F.3d (a process or system may not be copyrighted, even if it includes expressive elements). Though the "Total Control GPS" program may contain expressive elements, the Complaint alleges only that its **functions** were replicated by the defendants.  For instance:

46. The protected assets include the copyrighted **functional specifications** the copyrighted software known as Total Control GPS – Web Portal which provides the following **functionality** ... [lists functions]

69. . . .ALF . . . stated that the tracking services provided by TRAKSECURE had to be the same as those provided by e-STEPS with the same platform **functionality**, following the same **procedures** that e-STEPS had designed as part of the technologies offered under its contract.

90. ALF dismantled not only the Total Control platform, its **functionality** and its **processes,** but the very nature of e-STEPS business and services . . .

91. . . .TRAKSECURE added other modules to its base tracking program, copied e-STEPS' **solutions, functional specifications, know-how and structure**.

104. ALF also misappropriated the copyrighted technologies, the confidential information gathered from e-STEPS and its trade secrets, all of which were protected under the contract, and used them to develop, in-house, tracking and/or debt collection applications, which it could not have done without violating the clause that restrained ALF from copying the technologies consisting of trade secrets offered by e-STEPS as part of the contracted location service.

115. The instructions that Robles was giving TRAKSECURE at defendants' behest were intended to cause TRAKSECURE's system to **behave** in the same way that e-STEPS did.

127. In this way, TRAKSECURE used the **functional specifications** used for the e-STEP copyright and infringed that copyright and misappropriated e-STEPS' trade secrets.

128. As stated generally above, while TRAKSECURE was infringing e-STEPS rights, ALF was doing its own share when it started developing, in-house, other platforms in its collections department that would feed from the tracking service provided by e-STEPS as a contracted service and protected from replication.

139. On information and belief, currently, ALF and TRAKSECURE use, operate and commercially exploit for their economic benefit platforms, applications, software, mobile apps, which are based on e-STEPS' copyrighted **functional**

CIVIL 19-1637CCC								9

>		**specifications** and/or are and/or **behave** substantially similar to e-STEPS' Copyrighted Work.

(d.e. 1) (emphasis added).

E-Steps does not allege that defendants engaged in literal copying by copying object code or source code.  Rather, e-Steps alleges a nonliteral violation by which defendants ALF and Traksecure copied aspects of "Total Control GPS" to create a substantially similar competing software. In other words, plaintiff claims only that defendants' program shares the same functions or behaviors as "Total Control GPS."  Therefore, plaintiff's allegation that defendants had access to and modeled their new software after "Total Control GPS" is inapposite, as the functions, processes, and systems purportedly copied are not protected by copyright law.  Defendants have met their burden of demonstrating that "Total Control GPS" is not a valid copyright because the material is not copyrightable.

Even if the Court assumes, *arguendo*, that the functional aspects of "Total Control GPS" are protected under copyright law, plaintiff's claim would still fail at the second step because the Complaint fails to state how "Total Control GPS" and the allegedly infringing softwares are substantially similar. Plaintiff generally alleges that the infringing software programs perform tracking and debt collection functions.  However, the fact that the programs perform similar functions is not sufficient evidence of substantial similarity to survive a motion to dismiss.  The few specific similarities pointed to - such as the fact that both GPS tracking programs provide digital receipts (d.e. 1, para. 116) and include photos of cars (para. 124) - are elements "that are for all practical purposes indispensable, or at least customary, in the treatment of" vehicle

CIVIL 19-1637CCC                    10

tracking, and are therefore unprotected due to the doctrine of scènes à faire. Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 68 (1st Cir. 2009). Accordingly, plaintiff's Complaint does not meet the minimum pleading standards required to survive a motion to dismiss pursuant to FRCP 12(b)(6).

Because the plaintiff alleges copying of functional aspects of software that are not protected by copyright law, plaintiff's copyright claim as to "Total Control GPS" must be dismissed.

### 2.    *"Total Control GPS - Functional Specifications"*

"Total Control GPS - Functional Specifications" sets forth how the "Total Control GPS" program should behave, and is registered under a separate copyright. Plaintiff alleges that defendants have used these functional specifications to create their own software, which behaves similarly to "Total Control GPS." While the literal words of a functional specification may be copyrighted, the system it describes cannot be; as discussed *infra*, the system itself falls under the exclusion of 18 U.S.C. § 102(b). Accordingly, for the same reasons that apply to the "Total Control GPS" claim, plaintiff's copyright infringement claim as to "Total Control GPS - Functional Specifications" must be dismissed.

### 3.    *"Total Control GPS Installer Certificate"*

"Total Control GPS Installer Certificate" ("Certificate") is a document produced by the "Total Control GPS" system to verify that GPS tracking has been installed on a specified vehicle:

CIVIL 19-1637CCC                              11

> 57. One of the essential outputs produced by e-STEPS' platform was a certification of installation ["The certificate"] of the GPS without which the loan money could not be disbursed. This certificate was wholly and originally designed by e-STEPS, but most important, all its information fields are gathered from the complex database structure within the platform and are the result of the functional specifications, workflow and underlying structure designed originally by e-STEPS, copyrighted and protected.

(d.e. 1).

The only characteristics of the Certificate described in the Complaint are the above-mentioned "information fields." Plaintiff provides no description of other, more expressive elements of the Certificate, such as format, text, or graphics. Because defendant alleges copying only as to the functional elements of the document, the Court finds that it is uncopyrightable under 18 U.S.C. § 102(b).

Even assuming, *arguendo*, that plaintiff holds a valid copyright as to the Certificate, its claim would still fail at the second prong, where plaintiff must allege copying. Plaintiff alleges Traksecure programmers were shown the Certificate and took a picture of it (d.e. 1, paras. 117-119), and that Traksecure's system subsequently began to produce a substantially similar document (para. 121). However, beyond bare legal conclusions, plaintiff fails to identify any specific similarities between the two documents. Due to the failure to allege any facts in support of substantial similarity, plaintiff's claim as to the Certificate fails to meet the plausibility standard as to copying by defendants and must be dismissed.

CIVIL 19-1637CCC                              12

### *4.    Secondary Copyright Infringement*

As the plaintiffs have failed to plead sufficient facts to support a cause of action for primary copyright infringement, the claim that ALF engaged in secondary copyright infringement by providing Traksecure access to copyrighted materials must also fail.

As plaintiffs have failed to meet the pleading standard required to survive a motion to dismiss under FRCP 12(b)(6), defendant ALF's Motion to Dismiss is GRANTED (**d.e. 18**) as to plaintiff's First Claim for Relief.

### B.    Defense Trade Secrets Act

Defendants move for dismissal under FRCP 12(b)(1), lack of subject matter jurisdiction, on the basis that plaintiff's Complaint does not meet the jurisdictional requirements of the DTSA.  Specifically, defendants argue that plaintiff's Complaint must fail because it does not allege that "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836.

Defendants are correct that e-Steps does not make any allegations as to interstate commerce in the Complaint. E-Steps first addresses the issue of interstate commerce in its Oppositions to Motion to Dismiss (d.e. 33; d.e. 41), where it responds that the interstate commerce requirement has been met because the GPS software requires the use of the internet and satellites to function.   E-Steps cites to United States v. Lewis, 554 F.3d 208, 215 (1st Cir. 2009) where the Court of Appeals held that "the government may satisfy the interstate commerce element by proving that child pornography

CIVIL 19-1637CCC			13

images were transmitted over the Internet."  The statute at issue in Lewis,18 U.S.C. § 2252(a)(2), requires that images be "shipped or transported via interstate commerce."  The Court found that downloading an image from the internet meets this standard, even if the image originated in the same state where it was later downloaded.  However, 18 U.S.C. § 1836 has a different jurisdictional element: the product related to a trade secret must be "used or intended to be used in interstate commerce," not merely "shipped or transported."  Plaintiff offers no case law in support of importing a standard developed in a criminal child pornography case into a civil trade secret action.  Further, doing so would expand the jurisdiction of the DTSA to any product which requires an internet connection to function, which Court declines to do.

The Complaint itself states that both plaintiff and defendant ALF are LLCs registered to do business in Puerto Rico, and that the purpose of the GPS software designed by e-Steps was to assist ALF in tracking the cars that it financed.  The plaintiff does not allege that the GPS software is used or intended to be used in any other state or country, or that the cars tracked by GPS ever leave Puerto Rico.  "Total Control GPS" was explicitly created for use in Puerto Rico, an island, and in the absence of any facts in support, the Court cannot infer that the software is used or intended to be used anywhere else.

The Court finds that even considering its Oppositions, plaintiff has failed to sufficiently plead the interstate commerce prong of the DTSA. Accordingly, defendant ALF's Motion to Dismiss is GRANTED (**d.e. 18**) as to plaintiff''s Second Claim for Relief, alleging DTSA violations.

CIVIL 19-1637CCC 14

### C. Claims Under Puerto Rican Law

As the Court has dismissed all federal causes of action, it declines to exercise jurisdiction over the remaining causes of action under the laws of Puerto Rico. Accordingly, defendant ALF's Motion to Dismiss is GRANTED (**d.e. 18**) as to the causes of action stated at the Third and Fourth Claims for Relief, without prejudice.

### IV. CONCLUSION

Defendant ALF's Motion to Dismiss (**d.e. 18**) is GRANTED. Defendants Traksecure, Víctor García Porrata, Luis O'Farril, Conjugal Partnership García Roe, and Conjugal Partnership O'Farril Roe's Motion to Dismiss (**d.e. 34**) is MOOT. Judgment shall be entered by separate order.

SO ORDERED.

At San Juan, Puerto Rico, on September 25, 2019.

S/CARMEN CONSUELO CEREZO<br>
United States District Judge